IN THE MATTER OF THE ESTATE OF JOHN T. CARMODY, Deceased, v. A. T. COOPER and ALLAN McDUFF, Appellants.

Executors and administrators: COMPENSATION. The ordinary services of an administrator in the settlement of an estate, which are to be fully compensated by the statutory commissions, are all services incident to the closing and distribution of an estate, and not merely the collection and disbursement of the funds; and to justify an additional allowance the service must be extraordinary and necessary to the preservation of the estate. Thus the adjustment and collection of accounts belonging to the estate is not an extraordinary expense, but is one of the ordinary duties devolving upon the administrator and is compensated by the statutory commissions.

Same: EXTRAORDINARY COMPENSATION. An administrator's claim for extra compensation should be clearly and particularly stated and should be cautiously scrutinized by the court, and only such an amount allowed as is reasonable, when considered in connection with the statutory commissions.

Same: COLLECTION OF ACCOUNTS. It is the duty of an administrator to collect accounts belonging to the estate without extra compensation, unless it cannot be done in the exercise of reasonable diligence, in which event he may place them with an attorney for collection.

Same: EXTRAORDINARY COMPENSATION. The authority for allowing an administrator extraordinary compensation is statutory, and except for the statute the rule that a trustee is not permitted to make a profit from his office, or place himself in a position antagonistic to his trust duties, would apply to an administrator.

Same. Services of a professional character, knowledge of which an administrator does not ordinarily possess, may be compensated as extraordinary expenses; but no extra compensation should be allowed for inability of an administrator to perform his ordinary duties, nor can an administrator claim extra compensation because of his peculiar knowledge of the affairs and business of decedent.

Same: AMOUNT OF EXTRA COMPENSATION. The extra compensation to
be allowed an administrator is not what may be customarily charged
for the service, but what the service is reasonably worth, when
considered in connection with the ordinary compensation fixed by
the statute.

Same: ALLOWANCE OF EXTRA COMPENSATION: DISCRETION. The ques-
tion of whether extra compensation should be allowed an adminis-
trator, and the amount of the same are largely matters within
the discretion of the trial court.

*Appeal from Linn District Court.*—Hon. Milo P. Smith,
Judge.

Tuesday, January 20, 1914.

Objections by certain creditors to the final report of the
administrators of the estate of John T. Carmody, deceased,
were sustained in part, and, from the order so doing, the
administrators appeal.—*Affirmed.*

*Redmond & Stewart,* for appellants.

*Jamison, Smyth & Hann,* for appellees.

Ladd, C. J.—John T. Carmody died testate August 7,
1909, leaving with other property a foundry and machine
shop. His surviving widow and J. L. Bever, Jr., were ap-
pointed executors, but, upon objection being made by those
interested, resigned, and A. T. Cooper and Allen McDuff were
appointed administrators with the will annexed to succeed
them. They filed their final report on the 27th day of Octo-
ber, 1911, and thereto written objections interposed by cred-
itors having claims amounting to over $20,000. Hearing was
had thereon, and of the findings of the court in fixing their
compensation complaint is made. They demanded, in addi-
tion to the statutory compensation of $1,122, the sum of
$2,070 for services rendered in operating the machine shop

and foundry, $1,000 for services rendered by Cooper as attorney, and the sum of $1,573.50 in the collection of accounts. The court denied the last item, allowed attorney's fees in the sum of $300 and $962.50 for operating the plant. These several charges may as well be considered in the order mentioned:

I. The statute (section 3415, Code) fixes the commission payable to executors and administrators, "which shall be received in full compensation for all the ordinary services:

1. EXECUTORS AND ADMINISTRATORS: compensation. For the first one thousand dollars, five per cent.; for the overplus, between one and five thousand dollars, two and one-half per cent.; for the amount over five thousand dollars one per cent. Such further allowances as are just and reasonable may be made by the court for actual, necessary and extraordinary expenses or services." The expression "ordinary services" as therein used does not mean merely receiving and disbursing the funds of the estate, but all services which are incident to the closing and distribution of an estate. The amount passing through the executor's hands is merely the criterion by which to gauge compensation for such services, and the percentage only is provided therefor. Instances may arise where this will prove an inadequate return for the services rendered, but it is that fixed by law and is all that may be allowed for those ordinarily rendered by the executor or administrator in settling an estate of a decedent. If he employs an attorney or any one else to perform that work which under the law he is required to do, he must pay therefor, and the amount will not be charged as an expense of administration. *Lucich v. Medin,* 3 Nev. 93 (93 Am. Dec. 376); *Brignole v. Brignole,* 133 Cal. 162 (65 Pac. 294); *Hurlbut v. Hutton,* 44 N. J. Eq. 302 (15 Atl. 417). To justify the allowance of anything in excess of the statutory commissions, the executor or administrator must have actually rendered services of an extraordinary character, and these must have been necessary for the protection of the estate. What services will be regarded as

extraordinary necessarily depends on the peculiar circumstances of each case. To be such, they must be of a character not ordinarily required of an executor or administrator in the discharge of his duties—not within the routine of administration. Thus attendance on a pending suit is not an extraordinary service. *Holman v. Sims,* 39 Ala. 709. Nor is discounting notes taken of a surviving partner for the testator's interest in a partnership to expedite the settlement of an estate. *In re Mabley's Estate,* 74 Mich. 143 (41 N. W. 835). Nor is being present when an inventory is being made. *In re Van Nostrand's Estate,* 3 Misc. Rep. 396 (24 N. Y. Supp. 850). And the ordinary services rendered in collecting the debts due the estate, and interviews with creditors of the estate, are not outside of the ordinary duties of an executor or administrator. *Edmonds v. Crenshaw,* 1 Harp. Eq. (S. C.) 224. *In re Knapp,* 59 How. Prac. (N. Y.) 367. The accounts belonging to this estate, two hundred and twenty-four in number, amounted to $12,695.37, and $10,492.37 was collected. About a third of the accounts were disputed as being excessive. Adjusting and collecting them was the performance of a duty to discharge which the administrators were appointed and in compensation for which the statutory commissions were fixed.

Possibly owing to the smallness of the items more time may have been given to their collection than would the percentage allowed by statute compensate, but on other matters this may have been offset by overpayment for

2. SAME: extraordinary compensation.

services actually rendered. Suits were begun on several of the accounts, but no specific claim for extra compensation in collecting these was asserted. This should have been particularly stated to the end that the court might know precisely the services for which compensation was sought, and, even then, the claim in all cases should be cautiously scrutinized, and such an amount only, in view of the amount of statutory commissions, as is reasonable and just,

be allowed. *Steel v. Holladay,* 20 Or. 462 (26 Pac. 563) ; 2 Woerner's Administration, section 529.

Accounts which administrators cannot by the exercise of reasonable diligence collect may be placed in the hands of an attorney for collection, but, short of this, the labor is that exacted by the law of the administrators.

3. SAME: collection of accounts.

Here the claim was for collecting all the accounts of the estate, and the evidence is not such as to enable the court to say how many or which of the claims were such as might properly have been turned over to an attorney for collection or the value of extraordinary services rendered in collecting the same. All that appears is that several suits were begun, but the value of the services of Cooper in bringing these does not appear. For these reasons, we do not think the court erred in not allowing the administrators 15 per cent. of the amount collected on accounts or other sum in addition to the statutory commission.

II.  But for the statute authorizing an allowance to an executor or administrator of compensation for extraordinary services actually rendered and necessary for the protection of the estate there would be ground for the contention that no allowance should be made for services rendered by executor or admin-

4. SAME: extraordinary compensation.

istrator, as an attorney, on the theory that a trustee can be permitted to make no profit out of his office and should not be placed in a position where his interest may be opposed to his duty. See *Hough v. Harvey,* 71 Ill. 72; *State v. Butler,* 15 Lea (Tenn.) 113; *Taylor v. Wright,* 93 Ind. 121; *Lewis v. Dinkgrave,* 24 La. Ann. 489; *Noble v. Whitten,* 38 Wash. 262 (80 Pac. 451) ; Woerner's Adm'n, section 529; Perry on Trusts, 432. Such was the rule in England (*Burge v. Brutton,* 2 Hare, 373), though there the trustee was not allowed compensation, and there seems no reason for adhering to that rule with reference to compensation for services rendered professionally where trustees are now paid for

what they do, as in this country, *Turnbull v. Pomeroy*, 140 Mass. 117 (3 N. E. 15). This was the view early entertained in Alabama (*Harris v. Martin*, 9 Ala. 895), and seems to obtain wherever a statute such as that of this state has been enacted. *Sloan v. Duffy*, 117 Wis. 480 (94 N. W. 342); *In re Wilson's Estate*, 83 Neb. 252 (119 N. W. 524); *Mabley's Estate*, 74 Mich. 143 (41 N. W. 838).

Services exacting professional skill are not such as an executor or administrator ordinarily is capable of rendering and are uniformly ranked as extraordinary within the meaning of that term as used in the statute. While such officer may not be recompensed for expenses incurred in employing another to discharge duties merely on the ground of his own ignorance, as where unable to keep his own accounts or his unfamiliarity with bookkeeping, save from the statutory commissions allowed. *Lucich v. Medlin*, 3 Nev. 93 (93 Am. Dec. 376); *O'Reilly v. Meyer*, 4 Dem. Sur. (N. Y.) 161, he cannot claim extra pay on the ground of his superior competency owing to business experience or familiarity with the law. There always inheres in the settlement of every estate the obligation, unexpressed though it be, of dealing fairly with the worldly accumulations of a fallen brother and, as a last service, to see that these are distributed, without improper exactions, to the living entitled thereto. The circumstances then that Cooper had been employed by decedent in his lifetime, and was familiar with his business, and that McDuff was a machinist and had had an extended experience in the superintendency of machine shops, were not matters on which claims for additional compensation properly might be based.

5. SAME.

The inquiry always is, what has been done in behalf of the estate, and this having been ascertained, if that done has been an extraordinary service, necessary for its protection, extra compensation may be allowed. This is not to be what may be customarily charged or what it may usually be rated at, but what the service is reasonably worth in view of the commission fixed

6. SAME: amount of extra compensation.

by the statute. *Harris v. Martin,* 9 Ala. 895; *Clark v. Knox,* 70 Ala. 607 (45 Am. Rep. 93).

The affairs of the estate under consideration were not involved. There was a large outstanding indebtedness, but little of this was in dispute. The title to property was not questioned, save one tract which was amicably adjusted with the widow. The legal work consisted of preparing the usual papers with reports incident to the settlement of an estate and the preparation of applications and obtaining of orders for the management and disposition of the property. The testimony of Cooper concerning particular items tended to show the value of his services to have been between $700 and $800, though he estimated these in the aggregate to have been worth $1,000. The court allowed $300 therefor.

We are not inclined to interfere for that (1) whether compensation for extraordinary services and what this shall be is largely within the discretion of the probate court, and (2) though the attorney's testimony was undisputed, the court was not bound thereby, as the issue involved matter of opinion only, but might, in the light of his knowledge, fix such an amount as in addition to the statutory commissions would constitute reasonable remuneration. The applications were presented to and all the orders entered by the judge who made the findings complained of, and, as he may be assumed to have been familiar with charges for like professional services in that locality, we are not inclined to interfere with the order fixing the amount allowed for extraordinary services.

7. Same: allowance of extra compensation: discretion.

III.   The administrators operated the plant one hundred and thirty-eight days and claimed as compensation for such extraordinary services $15 per day. The court allowed $175 per month. Though the evidence disclosed that they acted together in much that was done, it conclusively appeared to have been one man's job to superintend the work, and that this was done in the main by McDuff. The evidence was such that the court could not well have allowed to exceed $250

per month nor less than $135 unless it were thought they had been otherwise compensated. Practically all of the business of winding up the affairs of the estate was transacted within the six months, and as the administrators, without being compelled to abandon their usual avocations, were allowed $2,348.50, we are not inclined to regard the compensation so inadequate as to justify interference by this court. —*Affirmed.*

EVANS, PRESTON, and WEAVER, JJ., concur.