[No. D011419. Fourth Dist., Div. One. Feb. 26, 1991.]

Estate of GEORGE F. BILLINGS, Deceased.
BEVERLY J. MONTAG, as Executrix, etc., Petitioner and Appellant,
v.
JOY L. BILLINGS et al., Objectors and Respondents.

[Opinion certified for partial publication.[1]]

---

¹Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of part II.

**COUNSEL**

Ferman W. Sims for Petitioner and Appellant.

Harmsen, Carpenter, Sidell & Olson, Harlan F. Harmsen, Timothy G. Riley, Peter H. Lunding, Haskins, Nugent, Newnham & Kane, Stephen L. Newnham and Patrick M. Smith for Objectors and Respondents.

OPINION

HUFFMAN, J.—Beverly J. Montag, executrix of the will of George F. Billings, appeals from an order of the probate court denying her claim for partial payment of statutory executrix fees in settling the fourth annual account and report of executrix in George's estate. Montag claims the trial court erred by "reducing [her] executrix's fee," and by failing to provide her with a statement of decision pursuant to Code of Civil Procedure[2] section 632. We disagree and affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

George died testate on June 19, 1985. At the time of his death, he was survived by his spouse Joy L. Billings, and three children from an earlier marriage (Craig M. Billings, Kimberly Mae Billings-Nobilette, and Stephen T. Billings). His last will and testament named his sister, Montag, as executrix and on July 25, 1985, she was duly appointed to that position with authority to administer George's estate without court supervision under the Independent Administration of Estates Act.

Immediately after her appointment, Montag retained Clifford M. Brown, CPA, to assist her with "various accounting and income tax matters, preparation of corporation and partnership payroll returns, preparation of annual probate accountings, preparation of Federal and State income tax returns, correspondence with the Internal Revenue Service, calculation and preparation of print-out [sic] of proposed distribution to heirs and many other related accounting services." Brown's services also included consultations with Montag; the estate's attorney, Ferman W. Sims; the attorneys of record for the beneficiaries; and J. Jason Kaplan, the estate's certified tax specialist.

On May 5, 1989, Montag submitted her fourth annual accounting and report of executrix to the probate court for approval. Included within the accounting were petitions for payment of partial statutory executrix fees, for reimbursement of executrix's expenses, for payment of statutory attorney fees, for reimbursement of attorney expenses, for extraordinary attorney fees, and for payment to tax attorney. On June 16, 1989, she filed an amended accounting and report to show the fee entitlement upon settlement of the estate was $99,206 (based on an inventory and appraisement exceeding $7 million) for both herself as executrix and Sims as the estate's attorney. She also noted she and Sims had each received $50,000 in preliminary

---

[2] All statutory references are to the Code of Civil Procedure unless otherwise specified.

allowances of such fees and was requesting the estate be authorized to pay them each an additional $24,000.

Joy initially objected to the payment of partial statutory executrix's fees and extraordinary attorney's fees, and to reimbursement of costs. Montag thereafter withdrew with prejudice her request for extraordinary attorney's fees for Sims. The court approved the fourth annual accounting and report of the executrix, with the exception of "the issue of surcharging the ordinary executrix fees [which was] continued." George's children thereafter joined with Joy in filing a statement in support of objections identifying various amounts which should be paid by Montag and not the estate (collectively, the children and Joy will be referred to as Objectors).

Objectors claimed "a large portion" of a $45,985 entry in Brown's billing analysis entitled "shared items" should be charged to Montag because "[it did] not represent the preparation and filing of fiduciary income tax returns." Montag asserted, however, that "at most, $13,000 are [sic] attributable to the preparation of probate accountings." Objectors then estimated "services pertaining to probate accounting" to be either $21,174 or $26,298, based on figures reflected in Brown's collected statements.

After noting Objectors' errors in classification and mathematics, Brown provided a "revised Analysis of Accounting Fees," reflecting "probate accounting" billings totalling $17,899. At the hearing on the matter, Objectors' counsel additionally argued "some significant portion" of certain ambiguously labeled accounting services exceeding $15,000 in value ought to be charged to Montag personally.

The court ruled Montag and not the estate should be responsible for payment of accounting fees directly attributable to ordinary probate accountings. It specifically found that, out of the $72,156 claimed accounting fees, $17,899 payable to Brown was Montag's responsibility. Montag's attorney requested the court issue a statement of decision and the court directed Joy's attorney to do so.

The statement of decision was prepared, and was signed and filed by the court without objection. It specifically ordered the sum of $17,899 payable to Brown to be paid by Montag from her statutory executrix's fees. She has timely appealed from that order.

DISCUSSION

I

Executrix's Fees

■ Montag first contends the probate court abused its discretion by reducing her statutory executrix's fee by $17,899. While conceding the court had discretion in deciding the matter, Montag specifically argues the court abused that discretion by failing to grant her full request of partial payment of executrix's fees because she was neither negligent nor untimely in her administration of the estate, and because her delegation of the duty to prepare the probate accountings to a third party, Brown, was necessary due to the complexity of the estate. Her arguments are not persuasive.

■ In reviewing a trial court's exercise of discretion, we will reverse only when it is affirmatively shown a prejudicial abuse of discretion has occurred. (*Mission Imports, Inc.* v. *Superior Court* (1982) 31 Cal.3d 921, 932 [184 Cal.Rptr. 296, 647 P.2d 1075].) The test is not whether we would have made a different decision had the matter been submitted to us in the first instance. Rather, the discretion is that of the trial court, and we will only interfere with its ruling if we find that under all the evidence, viewed most favorably in support of the trial court's action, no judge reasonably could have reached the challenged result. (*Smith* v. *Smith* (1969) 1 Cal.App.3d 952, 958 [82 Cal.Rptr. 282].)

■ While it is true, as Montag points out in her opening brief, an executrix's fee in California is statutorily set as to the specific amount based on the value of the estate (Prob. Code, § 901; *Estate of Getty* (1983) 143 Cal.App.3d 455, 466 [191 Cal.Rptr. 897, 40 A.L.R.4th 1175]) and is generally absolute unless the executrix fails to timely administer the estate or causes it to suffer a loss due to her default or neglect (Prob. Code, § 12205; *Estate of Roberts* (1945) 27 Cal.2d 70 [162 P.2d 461]), it has also long been established that when an executrix incurs expenses for work she has the duty to perform, those expenses may be charged against her statutory commissions. (*In re Moore* (1887) 72 Cal. 335 [13 P. 880]; *Estate of Lampman* (1940) 15 Cal.2d 212, 219-220 [100 P.2d 488].) As the court stated in *Moore*:

"We cannot lay down as a universal rule that in no case should an administrator be allowed to employ a book-keeper. This may properly be left to the probate judge. He may allow it if proper. If the services were such as, under the circumstances, the administrator ought to have performed,

and for which his commissions are intended to compensate him, such charge should be disallowed." (*In re Moore, supra,* 72 Cal. 335, 343.)

Similarly, in *Estate of Brignole* (1901) 133 Cal. 162, 164 [65 P. 294], the court stated in denying an executor the right to pay his personal attorney hired to do work classified as executor's work from estate funds: "Such services should be paid for by the executor himself. Otherwise the estate is made to pay twice for the same services."

Using related reasoning, the court in *Estate of La Motta* (1970) 7 Cal.App.3d 960, 964 [86 Cal.Rptr. 880] denied a public administrator authority to pay a third party a fee for performing one of the administrator's duties, the locating of the decedents' bank accounts. In denying the payment, the court said, "What is certain is that the Legislature never intended that the probate court have authority to order payment to a [third party], . . . for services which are part of the public administrator's official functions." (*Ibid.*)

Here, the probate court considered all the documents submitted and the arguments made on the issue of whether the $72,156 claimed accounting fees due to the complexity of the estate should be allowed as costs payable by the estate, and specifically found the amount of $17,899 payable to Brown for "probate accounting" should be paid by Montag and not the estate. In not allowing that cost against the estate the court stated:

"I think it is well-established probate practice that if one hires a professional to assist in carrying out one of the ordinary duties of being a personal representative, then the fees should be adjusted accordingly." In determining Montag should pay for the "services that can be attributable to her carrying out her duties," the court noted the case was of some complexity and the executrix's statutory fee would be quite sizable. It was also clarified the court was not ordering a surcharge against Montag, but simply ordering her to pay the amount "attributable to the preparation of the probate accounting."

Montag's argument the statements of the court concerning the complexity of the estate show it abused its discretion by not allowing the costs for complicated accounting matters which are necessarily compensable extraordinary services is meritless. In support of her argument, she cites language in 2 California Decedent Estate Practice (Cont.Ed.Bar 1989) section 20.13, that "[o]rdinary representative's services include uncomplicated ones . . ." for the proposition the accounting of a complex estate is extraordinary and should be paid for by the estate. However, this cited language does not foreclose the possibility complicated services might be ordinary. (See *Estate*

*of Buchman* (1955) 138 Cal.App.2d 228, 235 [291 P.2d 547].) Nor does it take away the discretion of the probate court to allow or disallow extraordinary fees based on claimed extraordinary services. (*Estate of Walker* (1963) 221 Cal.App.2d 792, 795-796 [34 Cal.Rptr. 832].)

Likewise, Montag's reliance on *Estate of Broome* (1912) 162 Cal. 258 [122 P. 470] and *Estate of Boggs* (1939) 33 Cal.App.2d 30 [90 P.2d 814] to support her contention abuse of discretion is shown because the law allows her to charge all accounting expenses to the estate due to its complexity is misplaced. These cases merely permit the court to exercise its discretion to allow such payment; they do not require it.

In *Broome*, the court noted, "[the probate] court, *in the exercise of its discretion*, will allow or disallow [payment for an accountant], as it shall determine the propriety or necessity of the employment by the administrator of this expert knowledge and skill . . . ." (*Estate of Broome, supra*, 162 Cal. at p. 267, italics added.) Similarly, in *Boggs* the court stated, "An executrix should be allowed expert assistance in handling the estate *if* the employment of an expert is reasonably necessary and *it is largely within the discretion of the probate court to determine whether such employment is reasonably necessary.*" (*Estate of Boggs, supra*, 33 Cal.App.2d at p. 33, italics added.)

We conclude Montag has not shown any abuse of discretion by the probate court in "reducing" her claimed fee. ▪ ▬▬ Rather, based on its finding a portion of the claimed accountant's fees were for her duty of ordinary probate accounting as executrix of George's estate, it properly determined those fees should be paid out of her statutory fees.[3]

## II*

. . . . . . . . . . . . . . . . . . . .

---

[3] Both the probate court and the parties at various times in these proceedings have characterized the denial of Montag's full claim to statutory fees as a "surcharge." However, that term as defined in the law, "[t]he amount with which a court may charge a fiduciary who has breached his trust through intentional or negligent conduct" (Black's Law Dict. (5th ed. 1979) p. 1292, col. 2), has no application in this case. The probate court expressly so found and the record supports this finding.

* See footnote, *ante*, page 426.

## DISPOSITION

The order of the probate court is affirmed. The parties are to bear their own costs on appeal.

Kremer, P. J., and Nares, J., concurred.